AUSA: Erin Ramamurthy   Telephone: (313) 920-0723
Task Force Officer: Dominic Michels   Telephone: (734) 502-4730

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

| United States of America | | |
|---|---|---|
| v. | | Case: 2:24−mj−30118 |
| Barry Willis | Case No. | Assigned To : Unassigned |
| | | Assign. Date : 4/1/2024 |
| | | Description: COMP USA V. WILLIS (KB) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __March 28, 2024__ in the county of __Wayne__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution of Controlled Substances |
| | Possession with Intent to Distribute Controlled Substances |

This criminal complaint is based on these facts:
see attached affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Dominic Michels, Task Force Officer (DEA)
Printed name and title

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: March 30, 2024

_____
Judge's signature

City and state: Detroit, Michigan

Anthony P. Patti, United States Magistrate Judge
Printed name and title

# AFFIDAVIT

I, Dominic Michels, being duly sworn on oath, state as follows:

## Introduction and Agent Background

1. I, Dominic Michels, am a Task Force Officer assigned to the Drug Enforcement Administration (DEA), Detroit Division of the U.S. I am sworn and empowered to investigate criminal activity as it relates to Title 21, U.S.C. Sections 841(a)(1), 846, and 843(b). I have been a Task Force Officer for eight months and have eight years of law-enforcement experience. In addition to my assignment as a Task Force Officer, I am currently a commissioned police officer with the Livonia Police Department where I have served for eight years. While employed, I have investigated drug violations, crimes against property, and crimes against people.

2. Prior to and since my assignment as a Task Force Officer, I have received additional, specialized training in investigating drug trafficking and money laundering. Further, I have worked with more experienced agents in investigations into possessing, manufacturing, distributing, and importing controlled substances, as well as how to finance drug transactions and launder drug proceeds.

3. The facts contained in this affidavit are based on my review of information provided to me by other law enforcement agents, witnesses, and individuals with knowledge of this matter, as well as my own investigation. The

1

information provided below is for the limited purpose of obtaining the requested criminal complaint and does not contain all details or all facts of which I am aware related to this investigation.

4. This affidavit is made in support of an application for a criminal complaint and warrant to arrest Barry Anthony WILLIS for violations of Title 21, United States Code, Section 841(a)(1) distribution and possession with intent to distribute controlled substances.

### Identification of Barry WILLIS

5. In late September of 2023, Livonia Police Department Officer Tamer received information from a cooperating individual, hereinafter referred to as "the CI" about a subject personally known to the CI as "Blue", who is involved in the sale and distribution of heroin. "Blue" was described as black male, approximately 55 years of age with a gray beard, approximately 6'1'' with a heavier build. The CI stated that "Blue" owned a gas station with an adjoining car wash on the east side of Livernois, North of Davison in the City of Detroit. The CI also provided the cell phone number "248-653-XXXX" for "Blue".

6. Officer Tamer located a Citgo Gas station with an adjoining car wash near Livernois and Davison which was consistent with the information provided by the CI. The address of this business was 13730 Livernois, Detroit, Michigan (**the Livernois Location**), and Officer Tamer concluded it was associated with Barry

2

WILLIS, who was also associated with an address of 42105 Dorchester Court Clinton Township, Michigan (**the Dorchester Court Location**). Officer Tamer then searched the Michigan Secretary of State computer system for WILLIS, obtained his driver's license photo, and showed it to the CI. The CI immediately identified the subject in the photograph as "Blue", the same subject from whom he/she has personally purchased heroin on multiple occasions in the past.

7. Additionally, a search of the Macomb County Tax Assessor's Office shows that Barry WILLIS is the taxpayer of **the Dorchester Court Location**. Officer Tamer also discovered that WILLIS is listed as the administrator of Livernois Ave Holding LLC and Soap's Group LLC, both located at **the Livernois Location**. WILLIS is listed as the officer and principal of this location, which investigators determined to be the Citgo gas station and adjoining car wash. A State of Michigan Licensing and Regulatory Affairs (LARA) entity search revealed that Barry A WILLIS is listed as the resident agent for Livernois Ave Holdings LLC.

### First Controlled Purchase of Narcotics

8. In Late February of 2024, Officer Tamer directed the CI to contact WILLIS via cell phone 248-653-XXXX and inquire about the purchase of heroin. During the conversation, WILLIS agreed to supply the CI with a quantity of heroin

3

and a meeting location was established. Officer Tamer monitored and recorded the conversation with the permission of the CI.

9. Members of the Livonia Police Intelligence Bureau established surveillance at the pre-arranged meeting location. Officer Tamer searched the CI's person as well as his/her vehicle and did not locate any money and/or controlled substances. Officer Tamer then issued pre-recorded buy funds to the CI. Officer Tamer followed the CI directly to the pre-arranged meeting location.

10. Officer Kirn observed the CI pull into the pre-arranged meeting location and park. A short time later, Officer Kirn observed the arrival of a dark green Jeep Gladiator registered to Barry WILLIS. The Jeep Gladiator parked behind the CI's vehicle. The CI got out of the driver's seat of his/her vehicle and entered the front passenger seat of the Jeep Gladiator. Moments later, the CI got out of the front passenger seat of the Jeep Gladiator and walked back over to the driver's seat of his/her vehicle. The Jeep Gladiator then drove away. Members of the Livonia Police Intelligence Bureau followed the Jeep Gladiator directly to the residence of 20203 Littlefield, Detroit, Michigan (**the Littlefield Location**). The CI drove away from the meeting location and Officer Tamer followed the CI directly to another pre-arranged meeting location.

11. Officer Tamer and the CI arrived at the pre-arranged meeting location. The CI then turned over a quantity of suspected heroin to Officer Tamer. The CI

4

informed Officer Tamer that when he/she arrived at the meeting location, "Blue" (aka WILLIS) arrived a short time later. The CI exited his/her vehicle and entered the front passenger seat of WILLIS's Green Jeep Gladiator. The CI stated WILLIS handed him/her a quantity of suspected heroin. The CI stated that in return, as payment for the suspected heroin, the CI handed WILLIS the pre-recorded buy funds. The CI stated he/she then got out of WILLIS's Jeep Gladiator and returned to his/her vehicle. Officer Tamer then conducted a thorough search of the CI and the CI's vehicle and did not find any money and/or controlled substances. The CI was then released.

12. Officer Tamer conducted a field test of the suspected heroin using the Nark II 33 Fentanyl reagent test kit on the quantity of the suspected heroin purchased from Willis, which resulted in the positive response for the presence of Fentanyl, a schedule 2 narcotic.

## Second Controlled Purchase of Narcotics

13. In late March of 2024, Officer Tamer directed the CI to contact WILLIS via cell phone 248-653-XXXX and inquire about the purchase of heroin. During the conversation, WILLIS agreed to supply the CI with a quantity of heroin and a meeting location was established. Officer Tamer monitored and recorded the conversation with the permission of the CI.

14. Members of the Livonia Police Intelligence Bureau established surveillance at the pre-arranged meeting location as well as **the Littlefield Location**. Officer Gagnon observed WILLIS's gray 2022 Jeep Grand Cherokee parked in the driveway, in front of the garage.

15. Officer Tamer searched the person of the CI and the CI's vehicle, resulting in the recovery of no money and/or controlled substances. Officer Tamer then issued pre-recorded buy funds to the CI and followed the CI directly to the pre-arranged meeting location.

16. A short time later, Officer Gagnon observed WILLIS leave **the Littlefield Location** through the side door and walk over to the 2022 gray Jeep Grand Cherokee parked in the driveway. WILLIS got into the driver's seat and drove away. Members of the Livonia Police Intelligence Bureau followed WILLIS. During the surveillance, officers observed WILLIS meet with another vehicle where WILLIS did a hand-to-hand transaction, consistent with a narcotics transaction with the driver of that vehicle. WILLIS then left and drove directly to the pre-arranged meeting location.

17. Officer Alhajar observed WILLIS arrive at the pre-arranged meeting location and park. Seconds later, the Jeep Grand Cherokee parked behind the CI's vehicle. The CI got out of the driver's seat of his/her vehicle and entered the front passenger seat of the Jeep Grand Cherokee. Moments later, the CI got out of the

front passenger seat of the Jeep Grand Cherokee and walked back over to the driver's seat of his/her vehicle. The Jeep Grand Cherokee then drove away. Members of the Livonia Police Intelligence Bureau followed the Jeep Grand Cherokee. The CI drove away from the meeting location and Officer Tamer followed the CI to another pre-arranged meeting location.

18.     Officer Tamer and the CI arrived at the pre-arranged meeting location. The CI then turned over a quantity of suspected heroin to Officer Tamer. The CI informed Officer Tamer that when he/she arrived at the meet location, WILLIS arrived a short time later. The CI got out of his/her vehicle and into the front passenger seat of WILLIS's Gray Jeep Grand Cherokee. The CI stated WILLIS handed him/her a quantity of suspected heroin. The CI stated that in return, as payment for the suspected heroin, he/she handed WILLIS the buy funds. The CI stated he/she then got out of WILLIS's Jeep Grand Cherokee and returned to his/her vehicle. Officer Tamer then conducted a thorough search of the CI and the CI's vehicle but did not find any money and/or controlled substances. The CI was then released.

19.     Officer Tamer conducted a field test using the Nark II 33 Fentanyl reagent test kit on the quantity of the suspected heroin purchased from WILLIS, which resulted in the positive response for the presence of Fentanyl, a schedule 2 narcotic.

## March 2024 Surveillance of WILLIS

20. In Early March of 2024, members of the Livonia Police Intelligence Bureau established surveillance on the green Jeep Gladiator bearing Michigan registered to WILLIS at Savy Sliders located at 14350 Livernois, a business owned by WILLIS's wife. Moments later, Officer Gagnon saw WILLIS exit the business and load boxes into the Jeep Gladiator. A short time later, WILLIS got into the driver's seat and drove away. WILLIS was followed directly to **the Livernois Location** and began unloading boxes. WILLIS took multiple boxes into the Citgo gas station. A short time later, WILLIS got into the driver's seat and drove away. WILLIS was followed again and eventually arrived at **the Littlefield Location**.

21. In late March of 2024, Officer Tamer observed a black 2023 Chevrolet Tahoe bearing Michigan License plate 2PAG43 parked in the driveway of **the Dorchester Court Location**, Clinton Township, Michigan. The Chevrolet Tahoe was previously identified as a vehicle registered to and driven by Makisha WILLIS, Barry WILLIS's wife. Additionally, Officer Tamer observed the name "Willis" present on the mailbox in front of the residence.

22. In late March 2024, members of the Livonia Police Intelligence Bureau established surveillance on **the Dorchester Court Location**. Officer Gagnon observed WILLIS's gray Jeep Grand Cherokee parked in the driveway. A short time later, Officer Alhajar saw WILLIS leave **the Dorchester Court**

**Location** in his gray Jeep Grand Cherokee and drive to **the Littlefield Location** with a case of water.

23.     Shortly after WILLIS arrived at **the Littlefield Location**, WILLIS left and drove to the area of St. Martins and Washburn. The Jeep Grand Cherokee parked on the curb and WILLIS remained in the driver's seat. Moments later, officers saw a black Lincoln SUV park behind WILLIS's Jeep. Officers saw an unknown black male exit the driver's seat of the Lincoln SUV and walk up to the front passenger door of the Jeep Grand Cherokee. Seconds later, officers observed the unknown black male return to the driver's seat of the Lincoln SUV. Both the Jeep Grand Cherokee and the Lincoln SUV then drove away. This interaction is consistent with a narcotics transaction.

## Search of the Dorchester Court Location

24.     On March 28, 2024, I, along with members of the Livonia Police Intelligence Bureau and Clinton Township Police Department, executed a narcotics search warrant at **the Dorchester Court Location**, determined to be WILLIS's residence. The warrant was approved by Wayne County Assistant Prosecutor Ryan Lukiewski and signed by Judge Sean Kavanagh of the 16th District Court of Livonia.

25.     Upon execution of the search warrant officers located and took Barry WILLIS into custody. A search of the residence resulted in the seizure of $133,242

of suspected narcotics proceeds, ten watches, one gold chain with a platinum pendant, and one handgun.

### Search of the Littlefield Location

26.     On March 28, 2024, I, along with members of the Livonia Police Intelligence Bureau and members of the Michigan State Police, executed a narcotics search warrant at **the Littlefield Location**, which investigators suspected to be WILLIS's stash house. The warrant was approved by Wayne County Assistant Prosecutor Ryan Lukiewski and signed by Judge Sean Kavanagh of the 16th District Court of Livonia.

27.     Upon execution of the warrant, officers located and took Frances BRYANT into custody. A search of **the Littlefield Location** resulted in the seizure of over 2.6 kilograms of cocaine, over 41 kilograms of fentanyl both in powder and pill form, a large pill press, a small pill press, a narcotics press, a handgun, narcotics packaging materials, narcotics scales, and $18,000 of suspected narcotics proceeds. Within the $18,000 recovered from **the Littlefield Location**, officers located $400 of pre-recorded buy funds.

### Search of the Livernois Location

28.     On March 28, 2024, members of the Livonia Police Intelligence Bureau and members of the Michigan State Police conducted a narcotics search

warrant at **the Livernois Location**. The warrant was signed by Judge Sean Kavanagh of the 16th District Court of Livonia.

29. Upon execution of the search warrant officers located $3,053 of suspected narcotics proceeds as well as a handgun.

30. Based upon the foregoing, there is probable cause to believe that WILLIS knowingly violated Title 21, United States Code, Section 841(a)(1) distribution and possession with intent to distribute controlled substances.

Respectfully Submitted,

_____
Dominic Michels
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me and
signed in my presence and/or by reliable
electronic means.

_____
Honorable Anthony P. Patti
United States Magistrate Judge
Eastern District of Michigan
March 30, 2024

11